# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE DISTRICT OF ARIZONA

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| SUSAN SUTTON-ROBINSON, | ) | No. 4:11-bk-16753-JMM |
| Debtor. | ) | **MEMORANDUM DECISION** |

## I. OVERVIEW

The chapter 7 trustee ("Trustee") objected (ECF No. 37) to a claimed exemption in an investment account, which allegedly held IRA assets. Those assets were then put back into the IRA, postpetition. Trustee also asserted that the transfer was a violation of the automatic stay and was void.

Susan Sutton-Robinson ("Debtor") responded (ECF No. 39) that these were traceable exempt funds that had been erroneously transferred to the nonexempt account by her brokerage firm, RBC Capital Markets, LLC ("RBC"). RBC had then corrected its error, on the books, by transferring the assets back into Debtor's IRA, postpetition. RBC also filed a response, exhibits and the Declaration of Rick Grimaud, vice president and assistant complex manager at RBC (ECF Nos. 45 and 46) in support of Debtor's position.

Trustee contemporaneously filed an adversary proceeding against Debtor and RBC seeking: (1) declaratory relief as to the estate's ownership interest in the funds; (2) damages for violation of the automatic stay by RBC; (3) avoidance of a postpetition transfer; and (4) turnover and recovery of the property or its value for the estate.

1  At a hearing on the objection, Debtor and the attorneys for Debtor, Trustee and RBC appeared, argued, and stipulated that the amount at issue was $56,248.39, which was the balance in the nonexempt account as of the petition date. The Court thereafter entered an order (ECF No. 49) taking the objection under advisement and reserving $56,248.39 plus $10,000 for potential damages, for a total of $66,248.39, pending resolution of these matters.

Having reviewed all the pleadings and considered the arguments, the court now renders issues its factual findings and decision in compliance with FED. R. BANKR. P. 7052.

## II. JURISDICTION

The court has jurisdiction over this exemption dispute pursuant to 28 U.S.C. §§ 1334(b) and 157(b).

## III. FACTS AND PROCEDURE

### A. Prepetition Events

In September 2007 Debtor owned a qualified individual retirement account ("IRA") as well as a non-IRA investment account ("Main Account"). Both accounts were with RBC.

On September 11, 2007, Debtor instructed RBC to transfer $11,459 in cash from the IRA to the Main Account. RBC alleged that, due to a clerical error, RBC had erroneously transferred *all* of the assets in the IRA to the Main Account. See Decl. of Rick Grimaud at ¶ 7. The total amount of cash and securities withdrawn was $503,833.74. The assets included, among other things, two securities purportedly at issue in this case: Motorola debentures and MFS mutual fund shares (together "Securities").

The next day, on September 12, 2007, RBC attempted to correct the error by transferring the IRA assets back. RBC's attempt was not entirely successful, however, because the Securities were still listed as assets of the Main Account, and remained so for the next four years. See Decl. of Rick

Grimaud at ¶ 11. The account statements dated September 1 - 30, 2007 showed, in relevant part, the following transactions:

**IRA - xxxx9804**

**WITHDRAWALS**

**Securities transferred out**

| DATE | DESCRIPTION | QUANTITY | AMOUNT |
|---|---|---|---|
| 9/11/07 | MFS TOTAL RETURN - C DIST TO xxxx9807 IDK DISTRIBUTION @ 16.4800 | -1,671.018 | -$27,672.06 |
| 9/11/07 | QUINTANA MARITIME LTD DISTRIBUTION @ 18.1100 TO xxxx9807 IDK | -1,500.000 | -$28,200.00 |
| 9/11/07 | MOTOROLA INC DEB CPN 7.00% DUE 5/15/25 | -20,000.000 | -$21,300.60 |
| 9/12/07 as of 9/11/07 | QUINTANA MARITIME LTD ADJ FR xxxx9807 IDK @ 18.110 | 150.000 | $2,752.50 |
| 9/12/07 as of 9/11/07 | MOTOROLA INC DEB CPN 7.500% DUE 5/15/25 | 200.000 | $212.31 |
| | **TOTAL:** | | **-$74,207.85** |

RBC Response (ECF No. 45), Exh. B.

**MAIN ACCOUNT - xxxx9807**

**DEPOSITS**

**Securities transferred in**

| DATE | DESCRIPTION | QUANTITY | AMOUNT | COMMENTS |
|---|---|---|---|---|
| 9/11/07 | MFS TOTAL RETURN - C DIST FR xxxx9804 ID | 1,671.018 | $27,672.06 | TRANSFER |

3

Case 4:11-bk-16753-JMM    Doc 50    Filed 03/19/12    Entered 03/20/12 10:18:24    Desc
Main Document - Trustee Objection to Exempt Property    Page 3 of 15

| | | | | | |
|---|---|---|---|---|---|
| 9/11/07 | QUINTANA MARITIME LTD DISTRIBUTION @ 18.1100 DIST FR xxxx9804 IDK | 1,500.000 | $28,200.00 | | TRANSFER |
| 9/11/07 | MOTOROLA INC DEB CPN 7.500% DUE 5/15/25 | 20,000.000 | $21,300.60 | | TRANSFER |
| 9/12/07 as of 9/11/07 | QUINTANA MARITIME LTD ADJ TO xxxx9804 IDK @ 18.110 | -150.000 | -$2,752.50 | | ADJ TRANSFER |
| 9/12/07 as of 9/11/07 | MOTOROLA INC DEB CPN 7.500% DUE 5/15/25 | -200.000 | -$212.31 | | ADJ TRANSFER |
| | **TOTAL:** | | **$74,207.85** | | |

RBC Response (ECF No. 45), Exh. A.

## B. Events in Bankruptcy

Debtor filed a voluntary chapter 7 petition on June 9, 2011. On the petition date, the approximate amounts in Debtor's accounts were $58,347.57 in the IRA, and $56,248.39 in the Main Account. However, on Schedules B and C, Debtor listed *neither* account.

On September 1, 2011, Debtor amended her Schedules, listing the IRA on Schedule B and claiming, on Schedule C, an exemption in the IRA in the amount of its declared value of $58,347.57. Trustee filed a timely objection, asserting that the IRA did not qualify as exempt property under the applicable statute.

Then, the original error by RBC "was discovered as a result of the preparation of the tax return, and documentation supporting the same . . . ." Debtor's Response (ECF No. 39), p. 2, ¶ 5. RBC allegedly had discovered that the Securities were still on the books of the Main Account as of September 23, 2011. *See* Id., Exh. C (12/2/11 email from RBC attorney). RBC immediately took action to correct the error by unilaterally transferring the Securities, valued at $49,756.27 (after deducting the requested distribution amount of $11,459) from the Main Account back to the IRA

4

Case 4:11-bk-16753-JMM    Doc 50    Filed 03/19/12    Entered 03/20/12 10:18:24    Desc
Main Document - Trustee Objection to Exempt Property    Page 4 of 15

with the notation "as of September 11, 2007 (just as it had done with the other assets on September 12, 2007)." Id.

The account statements ending September 30, 2011 showed the following relevant transactions.

**MAIN ACCOUNT - xxxx3431**

**DEPOSITS**

**Securities transferred in**[1]

| DATE | DESCRIPTION | QUANTITY | AMOUNT | COMMENTS |
|---|---|---|---|---|
| 9/23/07 | MFS TOTAL RETURN FUND-CL C<br>ADJ TO xxxx3430 ILJ<br>A/O 9/11/07<br>ADJ TRF FUNDS IN | -1,671.018 | -$22,140.99 | ADJ TRANSFER |
| 9/23/11 | MOTOROLA INC<br>DEBS 7.500 DUE 05/15/25<br>ADJ TO xxxx3430 ILJ<br>A/O 9/11/07<br>ADJ TRF FUNDS IN | -19,800.000 | -$23,688.90 | ADJ TRANSFER |
| 9/27/11 | MFS TOTAL RETURN FUND-CL C<br>ADJ TO xxxx3430 ILJ<br>ADJ TRF FUNDS IN | -292.359 | -$3,926.38 | ADJ TRANSFER |
| | **TOTAL:** | | **- $49,756.27** | |

RBC Response (ECF No. 45), Exh. C.

---

[1] Interestingly, the Main Account statement listed the Securities transactions under "Securities transferred in," and simply showed a "minus" sign before the amount transferred "in," rather than listing them under a "Withdrawals" category for "Securities transferred out," as had been done in 2007.

5

Case 4:11-bk-16753-JMM  Doc 50  Filed 03/19/12  Entered 03/20/12 10:18:24  Desc
Main Document - Trustee Objection to Exempt Property   Page 5 of 15

**IRA - xxxx3430**

**DEPOSITS**

**Securities transferred in**

| DATE | DESCRIPTION | QUANTITY | AMOUNT | COMMENTS |
|------|-------------|----------|--------|----------|
| 9/23/11 | MFS TOTAL RETURN FUND-CL C<br>ADJ FM xxxx3431 ILJ<br>A/O 9/11/07<br>TRANSFER ASSETS IN | 1,671.018 | $22,140.99 | TRANSFER |
| 9/23/11 | MOTOROLA INC<br>DEBS 7,500 DUE 05/15/25<br>ADJ FM xxxx3431 ILJ<br>A/O 9/11/07<br>TRANSFER ASSETS IN | 19,800.000 | $23,688.90 | TRANSFER |
| 9/27/11 | MFS TOTAL RETURN FUND CL C<br>ADJ FM xxxx3431 ILJ<br>TRANSFER ASSETS IN | 292.359 | $ 3,926.38 | TRANSFER |
| | **TOTAL:** | | **$49,756.27** | |

RBC Response (ECF No. 45), Exh. D.

The "transfers" brought the adjusted value balance in the IRA, as of September 30, 2011, to $97,744.21. See id. The account value in the Main Account, as of September 30, 2011, was $0.00. See id., Exh. C.

RBC then sent a letter of explanation to Debtor, dated September 30, 2011, which stated:

> Dear Ms. Sutton:
>
> As a valued client of RBC Wealth Management, you expect, and are entitled to, premier customer service and error free processing on your accounts. Due to an error in our operations department in 2007 some assets were moved to your retail account in error.
>
> The assets have since been adjusted back into your account in whole. The information below outlines the activity that took place in error:
>
> - On 9/11/07 a distribution request was made to move $11,459 from your retirement account to your retail account. The entire retirement account was moved in error.
>
> - On 9/12/07 the error was realized and attempts to adjust it

6

> were made at that time. In the adjustment there were securities that did not get adjusted properly. The Motorola bond was not adjusted in its entirety and the MFS fund never got adjusted back.
>
> The securities have now been corrected so all that moved into your retail account as of 9/11/07 was $11,459.
>
> On behalf of RBC Wealth Management operations, please accept my sincere apology for any confusion or inconvenience this error has caused you. Please review your records and confirm that everything was corrected to your satisfaction. If you have any further questions or concerns, please contact your financial advisor.

Debtor's Response (ECF No. 39), Exh. A.

On December 2, 2011, Debtor filed second amended Schedules, adding the Main Account as an exempt "investment account" with a value of $56,248.39 minus the $11,459, or $44,789.39. Schedule C further explained concerning the Main Account:

> (improperly put into debtor's individual name as opposed to remaining exempt IRA account by RBC, debtor's broker, in 2007, only recently discovered post-filing bankruptcy); the only amount that should have been in this account was $11,459, which would remain non-exempt.

On Schedule C, Debtor also claimed an exemption for the IRA in the amount of $58,347.57. Thus, the total claimed exemption in *both* accounts was $103,136.96.

Again, Trustee filed a timely objection maintaining that the funds in the Main Account as of the petition date ($56,248.39) were nonexempt and should be turned over to the Trustee. Trustee also maintained that RBC's postpetition transfer of the funds into the IRA was a violation of the automatic stay.

Debtor responded that the broker's error and subsequent correction of the error on the books resulted in all of the assets in the Main Account being exempt except for the $11,459 which Debtor had authorized to be transferred out of the IRA. RBC also filed a response which supported Debtor's position. In particular, RBC identified the Securities and argued that they were traceable assets.

At the hearing on the objection, RBC informed the Court that the amount in the IRA, as of December 30, 2011, was $84,915.64. In addition, the securities had been liquidated, for the most part. The parties stipulated that the amount at issue for purposes of this contested matter is $56,248.39, which was the balance in the Main Account as of the petition date. The Court ordered

7

Case 4:11-bk-16753-JMM   Doc 50   Filed 03/19/12   Entered 03/20/12 10:18:24   Desc
Main Document - Trustee Objection to Exempt Property    Page 7 of 15

1 an additional $10,000 reserve for potential damages in the adversary proceeding. Thus, $66,248.39
2 was ordered to be held by RBC pending resolution of this matter.

## IV. ISSUES

1. Whether the $56,248.39, which was transferred erroneously from the IRA to the Main Account on September 7, 2011 retained its exempt status.
2. Whether RBC violated the automatic stay by re-transferring the Securities postpetition, from Debtor's Main Account to Debtor's IRA.

## V. DISCUSSION

### A. Applicable Exemption Law

When a bankruptcy petition is filed, an estate is created consisting of all legal or equitable interests of the debtor in property as of the commencement of the case "wherever located and by whomever held." 11 U.S.C. § 541 (a)(1). Section 522(b) permits a debtor to remove certain property from the estate by claiming an exemption. Exemption rights are fixed as of the filing date of the petition. In re Kim, 257 B.R. 680, 687 (9th Cir. BAP 2000), aff'd, 35 Fed. Appx. 592 (9th Cir. 2002).

A claimed exemption is "presumptively valid." In re Nicholson, 435 B.R. 622, 630 (9th Cir. BAP 2010). If a party in interest timely objects, the objecting party has the burden of proving that the exemption is not properly claimed, by producing evidence to rebut the presumption of validity. Id. (citing FED. R. BANKR. P. 4003(c)). Once rebutted, the burden of production then shifts to the debtor to come forward with unequivocal evidence that the exemption is proper. Id. However, the burden of persuasion remains on the objecting party. Id.

Arizona has opted out of the federal exemption scheme, which is provided in 11 U.S.C. § 522(d). See ARS § 33-1133(B). Therefore, substantive issues regarding the allowance or

disallowance of the claimed exemptions at issue in this contested matter are governed by Arizona law. Under Arizona law, exemption statutes are to be liberally construed to effect their intent and purpose. In re White, 377 B.R. 633, 643 (Bankr. D. Ariz. 2007), aff'd, 389 B.R. 693 (9th Cir. BAP 2008).

Debtor exempted the funds in the IRA and the Main Account pursuant to ARS § 33-1126(B), which provides, in relevant part:

> B. Any money or other assets payable to a participant in or beneficiary of, or any interest of any participant or beneficiary in, a retirement plan under § 401(a), 403(a), 403(b), 408, 408A or 409 or a deferred compensation plan under § 457 of the United States internal revenue code of 1986, as amended . . . . whether the beneficiary's interest arises by inheritance, designation, appointment or otherwise, is exempt from all claims of creditors of the beneficiary or participant.

ARS §33-1126(B) (2012).

There is no dispute that Debtor's IRA is qualified under I.R.C. § 408, which governs the creation, operation, and taxability of IRAs, and it is therefore exempt. See 26 U.S.C. A. § 408. The issue is whether, to the extent of $56,238.49, the Main Account was also exempt as of the petition date.

## B. $49,756.47 was Traceable to the IRA

Debtor and RBC maintain that the assets transferred in error to the Main Account retained their character as exempt IRA assets because they are traceable, and ultimately, they were put back into the IRA. In fact, they argue that there was no actual transfer except on the books, and that the notation, "as of" automatically restored the assets to the IRA, as if they had never left.

Trustee acknowledges the general rule of tracing, but contends that the evidence was lacking in this case.

The general rule states that the deposit of statutorily exempt funds into a bank account does not affect a debtor's exemption nor does it change the exempt character of the funds, so long as the source of the exempt funds is reasonably traceable. If it is impossible to separate out exempt from

nonexempt funds, then an exemption cannot lie. In re Frazier, 116 B.R. 675 (Bankr. W.D. Wis. 1990) (social security benefits) (citing 31 AM. JUR. 2D EXEMPTIONS § 224 (1989)); In re Norris, 203 B.R. 463 (Bankr. D. Nev. 1996) (exempt wages).

Debtor and RBC produced account statements showing that at least $74,207.85 in securities was transferred out of the IRA and into the Main Account in September 2007. These are clearly the same exact shares and amounts, transferred between the two accounts.

Debtor presented sufficient documentation that the Securities were traceable, at least as to the amount of $49,756.27, which was the value of the Securities transferred back into the IRA according to the account statements.

The problem is not so easily resolved, however. The funds at issue were IRA assets and, thus, had the added gloss of federal statutes and regulations that restrict certain withdrawals or distributions.

### **C. Transfers From IRA Were Not Impermissible Distributions**

Generally, any amount paid or distributed out of an IRA is includable in the person's gross income, and thus loses its exempt status. I.R.C. § 408(d)(1). There is an exception for "rollover distributions" when a payment or distribution is "rolled over" into another exempt account within 60 days. Id. § 408(d)(3). Further, a trustee to trustee transfer of funds from one IRA to another is not considered a taxable transaction because no amount is treated as paid or distributed out of the IRA. Martin v. C.I.R., T.C.M. 1992-331, 1992 WL 122468 (Tax Ct. 1992), aff'd, 987 F.2d 770 (5th Cir. 1993).

The IRS qualification for an IRA can also be destroyed by certain withdrawals. Some of those are relevant to this analysis. Under I.R.C. § 408(e)(2)(A), an IRA "ceases to be an individual retirement account" if the account holder "engages in any transaction prohibited by section 4975." 26 U.S.C.A. § 408(e)(2)(A). Thus, an IRA loses its status as exempt property in a bankruptcy proceeding if the account holder engages in a prohibited transaction under I.R.C. § 4975. Some "prohibited transactions" include: (1) the "lending of money or other extension of credit between

[the IRA] and a disqualified person"; id. § 4975(c)(1)(B); (2) the "use by or for the benefit of a disqualified person of the income or assets of [the IRA]." In re Hughes, 293 B.R. 528, 530 (Bankr. M.D. Fla. 2003) (debtor loaned IRA funds to his closely-held corporation, which was a "disqualified person" under the I.R.C.); I.R.C. § 4975(c)(1)(D); and (3) the use by "a disqualified person who is a fiduciary" of "the income or assets of [the IRA] in his own interest or for his own account." Id. § 4975(c)(1)(E). Both a "fiduciary" and the owner of an IRA are considered "disqualified persons" under this statute. See Harris v. C.I.R., T.C.M. 1994-22, 1994 WL 12316 (Tax Ct. 1994) (citing H. Conf. Rep. 93–1280 (1974), 1974–3 C.B. 415, 501) (IRA funds used for down payment on IRA owner's personal residence).

Here, it is undisputed that RBC did not use the funds for its own benefit, nor did the Debtor use the funds for her own benefit (although she could have). Debtor's IRA funds were paid out from the IRA to her Main Account by mistake, admitted to by RBC. While, technically, Debtor could have had unfettered access to the funds, she did not utilize at least $56,248.39 of the funds, which remained in the Main Account on the petition date. Thereafter the mistake was discovered and the funds were repaid. In this case, Debtor's IRA never ceased being an IRA.

As a threshold matter, Trustee contends that Debtor failed to obtain an IRS determination on this issue, citing In re Richey, 2011 WL 4485900 (9th Cir. BAP Aug. 8, 2011). Whether Debtor *must* obtain such a determination is not clearly required under Richey. In Richey, the question was whether the original pension plans were qualified plans, from which funds were then rolled over into IRAs. Here, it was undisputed that the original IRA was qualified and the Main Account was obviously not qualified. The discrete issue is whether the assets from the IRA retained their exempt character while in the Main Account. Moreover, Bankruptcy courts routinely adjudicate IRA issues within exemption proceedings.

Trustee maintains that bankruptcy courts have determined that funds transferred from an IRA account cannot be "repaid" and regain their exempt status, citing Hughes. In Hughes, the bankruptcy court held it was irrelevant to the lost tax-exempt status of the IRA that the corporation repaid the loan two months later. Hughes, 293 B.R. at 530; see also In re Cobb, 231 B.R. 236, 239 (Bankr. D. N.J. 1999) (finding that withdrawal of money from IRA in order to pay creditors, and

11

repayment within 60 days, was not a qualified rollover). As explained above, <u>Hughes</u>, and other cases involving § 4975 violations, are factually distinguishable. Here, Debtor had no knowledge that the money/Securities had been withdrawn, nor were the funds used for her personal expenses or anyone else's benefit.

In effect, our facts involve a *procedural* error rather than a failure of a *fundamental* requirement of the IRC. The IRS permits taxpayers to "cure" possible defects in a qualified pension or IRA, for example, where the funds end up in a nonqualified account.[2] This Court has reviewed several cases in which the tax court examined various mistakes and misunderstandings in connection with rollover transactions.[3] These cases distinguish bookkeeping or procedural errors, which can be cured with "substantial compliance," from a "failure of a fundamental element of the statutory requirements," which cannot be cured.

A bookkeeping error was described in <u>Wood v. C.I.R.</u>, 93 T.C. 114, 1989 WL 83936 (Tax Ct. 1989). <u>Wood</u> involved a distribution of cash and stock from a profit-sharing plan to a taxpayer, who then established an IRA. The taxpayer was aware that his distribution was required to be rolled over into an IRA within 60 days of receipt. The taxpayer did everything that he could reasonably be expected to do in order to roll over his lump-sum distribution as required by law. The IRA trustee assured him that his request would be carried out. However, because of a failure by the IRA trustee to record the transfer of certain shares of stock, the trustee's records for September through December 1983 indicated that part of the distribution had not been transferred to the IRA account

---

[2] Effective for distributions after December 31, 2001, the Secretary of the Treasury may waive the 60–day requirement for rollovers when the failure to do so would be against equity and good conscience. <u>Jankelovits v. C.I.R.</u>, T.C.M. 2008-285, 2008 WL 5330811 at *2 (Tax Ct. 2008) (citing I.R.C. § 408(d)(3)(I); Economic Growth and Tax Relief Reconciliation Act of 2001, Pub.L. 107–16, sec 644(b) and (c), 115 Stat. 123.).

[3] The bankruptcy court may review Tax Court cases which construe the I.R.C. in reaching a correct legal and equitable result. <u>See, e.g.</u>, <u>In re Williams</u>, 269 B.R. 68 (Bankr. M.D. Fla. 2001) (reviewing Tax Court cases to determine whether authority existed to modify the requirement that a distribution must be rolled over within 60 days after actual receipt of the distribution check).

within the requisite 60–day period. Then, in the January statements, the IRA trustee corrected the journal entries to reflect that the shares were actually in the IRA rollover account. Id. at *120-22.

The Tax Court found that "the failure to record the stock transfer in September was a bookkeeping error," solidified by the fact that the IRA trustee made the journal entry on its own initiative and the taxpayer did not become aware of the problem until much later when the IRS audited the taxpayer's 1983 tax return. Id. at *122. The Tax Court concluded that this bookkeeping error by the financial institution did not preclude rollover treatment because, in substance, the taxpayer had satisfied the statutory requirements. It held: "[W]e have not found . . . any indication in the statute, legislative history, or case law that Congress intended to deny rollover benefits to taxpayers on the basis that a financial institution or other qualified IRA trustee made a mistake in recording a transaction." Id.

Other Tax Court cases have determined tax consequences for the taxpayer who fails to accomplish a valid rollover of stock and cash. For example, in Anderson v. C.I.R., T.C.M. 2002-171, 2002 WL 1587213 (Tax Ct. 2002), the tax court rejected the taxpayer's attempt to blame the bank *after the taxpayer failed to ask the bank to open an IRA* account in which to rollover his distribution.

In Crow v. C.I.R., T.C.M. 2002-178, 2002 WL 175221 (Tax Ct. 2002), the defect in the "fundamental element" was likewise the failure to transfer IRA account proceeds into another qualified IRA. In 1998, the taxpayer withdrew the entire balance of his IRA account via the transfer of funds to a nonqualified annuity. Although the taxpayer received a Form 1099-R, Distributions From . . . IRAs, . . . etc., reporting that the entire amount withdrawn was taxable, the *taxpayer took no action in response* and did not report the amount on his 1998 return. Then, in 2000, the taxpayer contacted the bank. In 2001, the bank took steps to recharacterize the transaction. It prepared documents stating that there had been a bank error and that the IRA account had been mistakenly closed out and should have been closed as a trustee transfer. Nonetheless, *at the time of trial, in March 2002, the withdrawn proceeds remained in the nonqualified annuity and had not been transferred*. The court dismissed the taxpayer's argument that it was a bank error. It emphasized

13

the fundamental failure of a rollover element, i.e., to transfer the IRA proceeds into another qualified IRA account, and *the failure to correct the defect in a timely manner*. Id. at *4.

Our facts are more aligned with the reasoning of Wood. In September 2007, Debtor authorized a transfer of only a relatively small amount of cash to the Main Account, but RBC erroneously transferred out all or nearly all of the assets. A few days later, RBC attempted to correct the error, and thought that it had transferred the funds back into the IRA, except that the Securities were still on the books of the Main Account. A longer period transpired in this case--four years as opposed to a few months--before the latter mistake was discovered and corrected. However, the notation, "as of" is evidence of the bookkeeping entry to put the money back into the IRA as of September 11, 2007. As additional evidence of a bookkeeping item, the 2011 Main Account statement listed the Securities transactions as deletions under "Securities transferred in" rather than listing them under a "Withdrawals" category for "Securities transferred out," as had been done in 2007. There is nothing in the record showing that either Debtor or RBC were aware of the mistake prior to 2011. Therefore, the facts indicate a bookkeeping error, the lack of any complicity or knowledge by Debtor in the "distribution," and the timely admission and correction of the mistake on the books by RBC once the error was discovered.

Based on the foregoing analysis of both case law on tracing of exempt assets and the IRC, the Court holds that the *traceable* assets at issue in the amount of $49,756.27 were exempt IRA assets as of the petition date, notwithstanding that they were on the books in the Main Account. The funds that were not accounted for, i.e., $56,248.39 minus $49,756.27 = $6,492.12, remain property of the estate. There was no proof provided that RBC actually corrected the books to transfer the $6,492.12 amount back postpetition.

## **D. No § 362 or § 549 Violation Was Possible**

The purpose of the § 362 automatic stay is to protect debtors and their property from their creditors while bankruptcy proceedings are underway. 11 U.S.C. § 362(c)(2) (acts to obtain possession or control of property of the estate); see also 40235 Washington Street Corp. v. W.C.

14

Case 4:11-bk-16753-JMM    Doc 50    Filed 03/19/12    Entered 03/20/12 10:18:24    Desc
Main Document - Trustee Objection to Exempt Property    Page 14 of 15

Lusardi, 329 F.3d 1076, 1081 (9th Cir. 2003); The purpose of § 549 is to provide a just resolution when the debtor herself initiates an unauthorized postpetition transfer of *estate* property. Id.

Here, the traceable property at issue has been determined to be exempt property. Therefore, neither Code sections are applicable to either protect or recapture the funds for the estate. The pending adversary proceeding shall be dismissed, as moot.

## **VI. CONCLUSION**

A separate order shall be entered requiring Debtor to turn over $6,492.12 to Trustee; disbursing $59,756.27 ($49,756.27 plus the $10,000 damages reserve = $59,756.27) to Debtor as her exempt property; and dismissing the pending adversary proceeding.

DATED AND SIGNED ABOVE.

To be NOTICED by the BNC ("Bankruptcy Noticing Center") to:

Debtor
Attorney for Debtor
Chapter 7 Trustee
Attorney for Chapter 7 Trustee
Office of the U.S. Trustee